JUDGE CABELL:
Two questions arise in this case:
1. As to the admissibility of the deposition of William Ball.
2. As to the due execution of the will.
1. The objection to Ball’s testimony is, that he had an interest in the cause, at the time his deposition was taken, by his being then liable to the costs as the next friend of the infant plaintiffs.
If he really was thus liable to the costs, the objection would be insuperable, and his deposition ■ inadmissible. _ I do not deem it important to decide, in this case, what acts of appointment, or of approbation or permission, on the part of the court, are necessary to constitute a next friend; nor in what particular stage of the suit, such acts must be performed. But I hold it to be a principle of natural justice, not contravened by any law, that whatever the court may do, no man can be made a next friend, so' as to subject him to costs, without his own consent. In the case now before us, such consent is not expressly proved; nor is it to be implied from any testimony or *proceeding in the cause. It does not appear, that he had any agency in instituting or conducting the suit. There is not merely the total absence of testimony to prove consent, express or implied; but there is as strong proof to shew that he did not consent, as could be expected to be adduced in support of a negative: for the attorney, who instituted the suit, expressly states, that he used the name of Ball as next friend, without’ consulting him, and without his authority; and that so far as he knew or believed, Ball was not apprised, prior to, or even at the time of, giving his deposition, that his naipe had been so used: nor is such knowledge fixed upon him, by any other witness in the cause. He cannot, therefore, be liable to costs; and, not being so liable, the idea of his being interested vanishes; and, with it, the objection to his testimony.
2. The other question relating to the execution of the will, is of great importance on account of the principles it involves.
The testamentary disposition of property is a legitimate and necessary subject of municipal regulation. Even if the right to make such disposition does not rest entirely on municipal laws, it certainly must depend on them for its effectual and beneficial exercise. They regulate the manner, and point .out the solemnities which must attend it; they prescribe the proof for establishing and perpetuating the disposition, and they enforce its execution.
After a will has been determinied to have been duly executed, our laws pay great regard to the want of advice or of learning, in which it may have been written; and, therefore, construe it benignly, with great favour and liberality, so as to effectuate the real intention of the testator, although he may not have used the words and phrases most proper for expressing that intention. But no such liberality is permitted in dispensing with any of the requisites of the statute, as to the execution an<^ proof of *the will. The forms required for these purposes, are guards devised by the wisdom of the legislature, against the practice ’of imposition on testators in extremis, and the fabrication of false and spurious wills after their deaths. A strict adherence to these requisites may sometimes defeat the wishes of particular individuals. But it is better to permit a particular inconvenience, than a general mischief. And this maxim is, perhaps, more applicable to this subject, than to most others; for, if a man fails, by omitting the requisites of the statute, to make a will for himself, the law makes one for him; which, in most cases, is a good will, and, in many cases, the best will.
Our statute of wills requires, that a will shall be in writing; that it shall be signed by the testator, or by some other person in his presence, and by his direction; and moreover, if not wholly written by himself, that it shall be attested by two or more credible witnesses, subscribing their names in his presence. It is, in its essential parts, very nearly a transcript from the English statute of 29th Ch. 2, ch. 3, commonly called The Statute of Frauds and Perjuries. The principal difference is, that we do not in any case, require more than two witnesses, while they require three; and that we dispense entirely with the attestation of subscribing witnesses, where the will has not only been signed by the testator, but wholly written by himself. The English decisions on the subject of wills, will be therefore entitled to great respect.
As to what shall amount to proof, that a will was signed by the testator, a question arose in England shortly after their statute, which, although decided as early as the year 1682,(a) has been renewed from time to time, till the year 1813.(b) That question was, whether the witnesses should “see the testator sign,” or whether the testator’s acknowledgment of the signature, would be sufficient. It *is true, the question did not always assume that precise form; for, it was often in the shape of an enquiry, whether the witnesses could attest at different times. But, although differing in form, the question was, in fact, the .same; for, the will having been *185 signed in the presence of one or more witnesses, those who were called in to attest it afterwards, could attest the acknowledgment only. There was, indeed, one case,(c) in which the testator, “with his pen, went over his name:” but no importance was attached by the court to that circumstance. The real question was, whether the acknowledgment by the testator, was sufficient. It is somewhat remarkable, that the bar should so often have made this question; for it was decided by tile court, invariably, in favour of the sufficiency of the acknowledgment.(d) It is possible that the case of Lea v. Lib, Carthew 35, may be considered as constituting an exception to this current of authorities. But, so far as relates to this point, the question did not arise in that case; for, the will was proved by one witness only, and the codicil by two. What fell from the judges in that case on this point, may be considered as an obiter dictum; and it was so regarded by Parker, chief baron, in Ellis v. Smith. (e)
The counsel for the appellants, while they rightly contended that the signature to the will must be proved, and while they admitted that proof of the testator’s acknowledgment of the signature, would be received as full proof of the signature itself, contended nevertheless, that proof of the testator’s acknowledgment, that a writing purporting to be a will, and having the testator’s name signed to it, is his will, would in no case be sufficient. I have examined *with minute attention, every case to which they referred, and many others in addition: but I have not observed a single decision, countenancing such a distinction. The only case that even looks that way, is the case of Gryle v. Gryle,(f) in which, Lord Hardwicke declined giving any absolute opinion, but was inclined to think the will void, because, although it had been executed in the presence of two witnesses, the third witness only heard the testator “acknowledge it to be his will” Even the leaning of such a mind as Hardwicke’s is entitled to respect, if it continue to lean. But, it is manifest from what he himself said eleven years afterwards, in Grayson v. Atkinson,(g) that his mind was confirmed in the opposite direction. In that case, the question was, whether the witnesses should prove the “factum of signing,” (and of course all must have seen the signing,) or whether proof of the testator's aclcnowledgmeut, is not proof of the signing. Some of the witnesses, did not see the testator sign; and the case is not so stated, as to shew the precise terms of the acknowledgment made to the others. It is certain, however, that no distinction was made between a testator’s acknowledging his signature to a will, and his acknowledging a will signed by him, to be his will; and I am of opinion, that the arguments of Lord Hardwicke, apply as strongly to the one, as to the other.
The case of Ellis v. Smith,(h) came on in the year 1754, (two years after Grayson and Adkinson,) and Eord Hardwicke was assisted by Sir John Strange, master of the rolls, Willes, chief justice, and Parker, chief baron. In this case, as in the preceding, there is no statement of the circumstances. But, in this case also, the question was as to the sufficiency of proof of the testator’s declaration or acknowledgment; and the sufficiency was sustained by the unanimous opinion of the court. Parker, chief baron, speaks of it as a “declaration that it was his will.” Pie refers, *also, in support of his opinion, to a case in Skinner, (i) where the acknowledgment was to the same effect. Sir John Strange speaks of the acknowledgment as being of the same kind. Willes, chief justice, speaks of the acknowledgment as being of the hand writing; and the Lord Chancellor speaks of it generally, without confining it to the will or signature. This indiscriminate use of the terms, “acknowledgment of the hand writing or signature,” and “acknowledgment of the will,” proves that the judges did not think there was any difference between them.
But, it is useless to multiply cases on this point. I will mention only one more, Westbreach v. Kennedy,(j) which seems to me directly in point; for, there the reporter gives the words of the third witness, who did not see the testator sign, but heard him acknowledge it to be “his will.”
There is not, therefore, on authority, any such distinction as that contended for by the counsel for the appellants; nor can it be admitted on principle The whole of the doctrine on this subject, is simply this: that, where the witnesses do not prove the factum of signing, by having actually seen the testator sign, they must prove that he recognised the signature. But, what shall amount to proof of such recognition, is to be determinied by the general principles of evidence. Why is proof of the testator’s express acknowledgment or declaration, that the signature is his, held to be sufficient? Because, such proof, by the subscribing witnesses, is, in the absence of other testimony, deemed and laken to be evidence of the signing by the testator, equivalent to proof by them that they saw him sign. • And, when a man, holding in his hands, or pointing to, a paper writing lying before him, and having his name previously signed to it, says to the witnesses, “this is my will,” such declaration refers not merely to the writing above the name, but to the name also ; and, ^therefore, is as much evidence of the signing by the testator, as if he had acknowledged the signature in terms. Indeed, if there be any difference, I think *186 the difference is in favor of the acknowledgment that it is his will; for, that is not merely' evidence of the signing, but is an effectual publication of it as his will.
But, although I cannot assent to the distinction contended for by the counsel for the appellants, I am yet of opinion, that this will has not been executed according to the statute.
The statute requires a will to be signed, which it permits to be done, either by the testator himself, or by some other person for him; but, if the signing be, not.by the testator himself, but by some other person, it must be done in the presence of the testator, and by his direction; which facts must be proved by two witnesses, subscribing their names in his presence. No defect in their testimony can be supplied aliunde. They must prove every thing, or the will falls. Moreover, each witness is to prove all that is necessary to the- execution of the will. No deficiency in the testimony of either subscribing witness, can be supplied by the full testimony of the other.-. Each must, therefore, prove the signing by the testator; or, if it shall appear, that the signing was not by him, but by some other person, each witness must prove it to have been done in the presence of the testator, and by his direction. In other words, each witness must prove every thing which it would be necessary for him to prove, if the law required one witness only.
Let us apply these principles to the testimony of the subscribing witnesses to this will.
Scrimger, the first witness, proves, that Corbin signed the name of the testator in his presence, and by his direction. His testimony, therefore, is full and sufficient. But, how stands the case as to David Barrick, the other witness? The verdict, as relates to his testimony, is as follows: that the said David Barrick, having been sent *for, “went to the house of James B. Burwell on the morning of the 4th of September, 1811, and found the said James B. Burwell sitting on the bed with the said paper writing in his hand,” (meaning the paper writing previously attested bjr Scrimger,) “when the said James B. Burwell asked him to sign that paper, and the said David Barrick thereupon signed his name to the said paper writing, as a witness, in the presence of the said James B. Burwell; that the said Bar-rick then asked the said Burwell what it was that he had signed, and the said Bur-well replied, it is my will, but you need not make a talk about it, it is time enough.” And the jury then go on to say, that the said paper writing so attested or signed by Scrimger and Barrick, is the same which was admitted to record in the county court of Richmond on the 4th day of November, 1811, which is referred to in the proceedings and issue in this cause, and that Burwell was, at the time of the attestation of the said paper writing by the said Scrimger and Barrick, of sound mind and disposing memory. .
The substance of Barrick’s testimony is, that at the request and in the presence of Burwell, he subscribed his name as a witness to the will, and heard Burwell acknowledge it to be his will. It becomes important to determine with precision, what is proved by this testimony. And here I will remark, that what shall, or shall not be a will, depends on the law, and not' on the opinion, the wishes, or acknowledgment of the person making it. His acknowledgment does not prove it to be a will. If it did, it might prove a writing not signed, to be his will; or, it might prove a writing to be a will, which, although signed by the testator and attested by witnesses, was not subscribed by the witnesses ia the presence of the testator. It is the province of testimony to establish facts only ; the law arising from facts, thus established, belongs to another department. I readily admit, that in many cases, proof of the acknowledgment of a thing, is received as proof of the *thing itself. Thus, if a man acknowledges his signature to a promissory note, proof of that acknowledgment is deemed proof of the signature itself; as much so as if the witness had seen him sign. And it is clear, that the same principle applies to wills. But, this is as to facts only. The acknowledgment proved by Barrick, “it is my will,” must, therefore, be restricted to a recognition of the signature; and, in considering what such recognition proves, we must view it alone, unconnected with and unsupported by the testimony of other witnesses. Thus considered, what does it prove? Nothing more than that the will was signed by Burwell himself; or that it was signed by some other person for him, whose act he thus recognises and makes his own. These two facts, a signing by Burwell himself, and a signing by some other person for him, are so different in their nature, that the same acknowledgment cannot prove them both, as applies to the same will. It can prove only one of them. My opinion is, that the acknowledgment proved by Barrick, naturally refers to, and proves a signing by Burwell himself; and that it proves that, as effectually as if the witness had seen him sign. Barrick’s testimony then, regarded as a single witness to a signing by the testator, is full and sufficient; and if Scrimger’s testimony had been the same with Barrick’s, the will must have been established. But as the case is, here is one witness proving' a signing by the testator, and another proving a signing by some other person: and thus the requisites of the law, two witnesses to the same facts, are wanting, and of course the will cannot stand.
Admit, however, that the acknowledgment, “it is my will,” refers to and proves a signing not by the testator, but by some other person, whose act is thus recognised, it surely can go no farther. It cannot be admitted to prove that such signing was in the presence and by the direction of the testator. These facts are distinct from, and additional to, the mere recognition of the signature; for,*a man may recognise a signature by some other person, which was made, neither in his presence, nor by his direction. The testimony *187 of Barrick, therefore, if relied on to prove a signing by Burwell, but not by Corbin, is deficient in not proving that it was thus signed in the presence, and by the direction of Burwell. As Lord Hardwicke said,(k) requiring a will to be signed, means that some evidence shall arise from the handwriting. It was intended as a guard against fraud and imposition; and so great is the importance attached to it by ottr statute, that where a will is not only signed by the testator, but wholly written by him, it dispenses with the attestation of subscribing witnesses altogether. If the will be not signed by the testator, but by some other person, it then substitutes another guard, in lieu thereof; it requires the signing to be in the presence and by the direction of the testator; which facts are to be proved by two witnesses. There being in this case, only one witness (Scrimger,) to these facts, the will cannot be established.
I would not wish it to be understood as my opinion, that where a will is not signed by the testator, but by some other person, in his presence and by his direction, that the witnesses must hear the direction, and see the signing. My opinion is, that any other equivalent proof will be received; and I see no reason for excluding from such a case, the principle heretofore mentioned, that proof of the acknowledgment of a thing is equivalent to proof of the thing itself. If, therefore, it should be proved by two witnesses, that a man had acknowledged the signature to his will, as having been made by some other person, in his presence and by his direction, and had requested the witnesses to attest it as his will, who subscribed their names accordingly, I should have no hesitation, as at present advised, to pronounce it a will duly executed according to the statute.

 See 2 Oh. Oa. 109.

 1 Ves. and Beam. 362, Westbreach v. Kennedy.

 Jones v. Lake, 2 Atkins, 176, and 2 Ves. 455. (in a note.)

 Anon. 2 Cha. Ca. 109: Cook v. Parsons, Prec Ch. 184; Lemayne v. Stanley, 3 Lev. 1; Jones v. Lake, 2 Atkins, 176, (in a note;) 2 Ves. 455, S. C.; Dormer v. Thurland, 2 P. Wms. 509; Grayson v. Atkinson, 2 Ves. 454; Stonetouse v. Evelyn, 3 P. Wms. 252; Ellis v. Smith, 1 Ves. jr. 11; Addy v. Grix, 8 Ves. 504; and Westbreach v. Kennedy, 1 Ves. and Beam, 364.

 1 Ves. jr. p. 12.

 2 Atkins. 176.

 2 Ves. 454.

 1 Ves. jr. p. 11.

 Pa. 227.

 1 Ves. and. Beames, p. 364.

 3 Vesey, 459.